The last case on the docket this morning is People v. Keller. And you're in trouble now because you've got an opposition, don't you, huh? Let's see if he likes coming here so much. Yeah. We've got Ms. Strawns up first. Is that right? People v. Brett Keller, 09-442. May it please the court, counsel. I apologize up front if my voice comes and goes. I'm not in charge of it, I guess. I represent Brett Keller who's convicted of theft of a pickup truck. He's serving a seven-year prison sentence for it. This is a very simple case. We have one issue of reasonable doubt. He was at charge with three counts of the theft of the truck, but they only entered a judgment on the first one, which alleged that he knowingly exercised unauthorized control over the truck with intent to permanently deprive the owner of the use for benefit of the truck. So what that means is the statement proved four elements, that Gerald McRae was the owner of the truck, that the defendant exercised unauthorized control over the truck, that he did so with intent to permanently deprive McRae of the use or benefit of it, and that the truck was worth more than $10,000. We'll make it easy on you and concede three of those. The only one we want to talk about is the intent to permanently deprive. The state completely failed to prove the intent element. Now, it's true that intent can be inferred. The intent to deprive can be inferred from any lack of evidence showing that he intended to return the truck or leave it in a place where it could be safely recovered. There's a case, People v. Pazdal, that is exactly on point with that. Well, it follows, then, that any evidence that he did leave the truck where it could be easily found cuts against the inference that he intended to deprive the owner of it permanently. That's exactly what the defendant did in this case. He left the truck in a public place, well lit, at a 24-hour gas station convenience store in a small town. No one gets more traffic than a gas station in a small town. He left the keys in the truck so that the owner could have it back. It was not really damaged. There was some mud in it, but there was no damage to the truck to speak of, nothing of any significance that would mean that the owner could use the truck. What else could he have done with it? He could have, had he intended to deprive the owner of the truck, he could have left the truck in the woods. He could have locked it in the garage. He could have driven into a lake. He could have done anything. Had he done any of those things, it certainly would stand to reason that the court could fairly infer that he intended to deprive the owner of the use of the truck. The question is, what was his intent at the time he took the truck? Do you agree with that? If you steal something and change your mind and take it back later, it's still a theft, right? So the question is, what was his intent at the time? And I think that the only way that we can determine what his intent was at the time is by looking at what he actually did during the entire transaction. Certainly, had he taken the truck and then had a conversation with someone at the local bar and said, You know what I'm going to do? I'm going to take this truck home and I'm going to keep it. Then we know what he intended when he picked it up. We don't have any evidence like that, so we need to look at everything that he did. What else could he have done? He left the truck in a facility that has a lot of traffic, basically. Absolutely. And he left it in the open, left the keys there. Yep. Is there anything in the record indicating that he told the owner or that he told anyone who could be an agent of the owner or could contact the owner that he had taken it and where it was left? No, there's nothing in the record that suggests that he did any of that. Then why isn't this a jury question? Since you can make a rational argument both on ax and omission that there's evidence on both sides of the question. Why isn't this a question for the jury? Well, I can argue for this. Well, it certainly, of course, is a question for the jury. I'm arguing that the jury just got it completely wrong because they just don't get it. But you're not arguing that there's no basis in the record for its decision as far as the factual question. Well, I have to argue that there's no basis for their decision because otherwise I wouldn't have much of a reasonable doubt. So I would say that there isn't any basis in there. There is absolutely no case anywhere in the state of Illinois that says you have to call the owner and say, dude, I took your truck. There's nothing that says anything like that. That's why we've got to look at all these cases. There's actually not a published decision in this state that goes directly to these facts. All of the decisions that are similar to this case. What evidence is there that he intended to borrow the truck? I guess that's what your defense is. He left it. Yeah. The fact that he left it there, forgot everybody to take it back. At the time, as Judge Stewart said, at the time he got in his truck, how does the jury know what his intent was at that time? That he just wanted to borrow it. Maybe he tried to call the owner. He had a witness there that said, yeah, I saw him dial the phone number saying I need to borrow this truck and do something with it. And the guy wasn't there. Well, that would maybe be some intent. What I can say is that he didn't have the truck for very long at all. It's not like he took the truck and left it a month later. I mean, we're talking about a number of hours. Isn't it just reasonable for the jury to assume that he changed his mind and said, man, I stole this damn truck. I want to get rid of it. Isn't that just as reasonable for the jury to assume that? I don't think so in this case, no. Why not? Because there's absolutely nothing other than the fact that he got in the truck and drove off to suggest that he intended to permanently deprive at that point. There's nothing that says that. If the jury were to decide the way you're talking, they're essentially making possession of the truck, of a stolen truck, a strict liability offense. And it's not. It's simply not. It requires some knowing intent to permanently deprive. And we just don't have any evidence that he did. Isn't recent possession of stolen property, aren't you allowed to infer from that? You can infer from that on a different charge, but not to the theft charge, no. You can't infer from that to give him that intent from the very beginning. There's just nothing there. There's nothing that supports it. Did he testify that he had to borrow it because he needed it for some emergency or anything? He did not testify in this case. So there's nothing in there to show what other than his act of taking somebody else's property without their permission. Well, since he did not testify, he did not tell. He certainly did not testify that I took it just for the moment. I needed it in an emergency. Certainly not. There's no evidence to that. That effect is he's the only one that could give it, and he did not testify in his own defense. As you know, he doesn't have to. In the what I'll call joyriding cases, okay, I mean, usually isn't there some evidence like that? I mean, at least the other people involved say our plan was just to hop in and drive it around the neighborhood for a while and then leave it or whatever. I mean, isn't that usually the case? In most cases. Actually, here's a great people charade, which I didn't sign in my brief because I wasn't thinking about that along those lines of trying to argue this was joyriding, although I do think that's what they should have charged. In that case, a woman actually hears a noise outside of her car, gets out. Some man gets in it, jumps off in it, and drives away. Essentially, he's carjacked first when he's done. He ends up convicted of criminal trespass to a vehicle. The number one case on this is People v. Woods, which says that subsection 3, which is from the previous version, is not intended to convert all joyriding escapades into theft. Unless the abandonment of the vehicle is under such circumstances, the owner probably would be deprived permanently of the use or benefit of his car. Was he charged also with criminal trespass? No, he was not. He was just charged with a big one, which is my point. The state chose. Was the jury instructed on criminal trespass? I don't believe so. No, I don't think so. He could have asked for that. He could have asked for it, but why should he when he knows full well they can't prove his intent to permanently deprive him? It was a strategy call, which went bad or wrong, but just because the jury was wrong in this case. All of the evidence, I mean, it's natural. Let's see, how do I look at this? You should presume his intent based on the natural consequences of his actions. And what he did was the best he could do under the circumstances. He lived nowhere near this area. We're talking about a rural area out in the middle of nowhere. He doesn't know the owner of the truck. He's there doing someone a favor. He takes this truck. I mean, he admits he takes the truck. Can't argue with that. He couldn't take it back. He's out in the middle of nowhere. He doesn't know where he is. And if you watch the video of him in the police station and some of the testimony about an accident he was in, so he had a morphine patch, he's a little whacked out. He couldn't possibly have returned it. He did the next best thing he could, which was leave it right here in front of God and everybody, make plans to go away, which is what he did. He didn't stop in there and ask the clerk at the store, can you tell me how to get home to Jacksonville? That would have shown an intent to permanently deprive. He didn't do that. He stopped there with the truck, left it, and called his mommy to come get him. That shows that he intended the natural consequences of his actions, which is for this truck to be found. It's returned the best he knows how. So there's no reason. Or to be found or taken by somebody else. If someone else interferes and takes the truck. I do want to point that out. The owner left the keys in the truck, too. So the fact that the defendant did, that isn't really, it's not really his responsibility what happens after that. But, heck, I leave my keys in the truck all the time. Of course, the owner left his keys in it way out in a rural area where you wouldn't really anticipate anybody else coming along. That's true, too. But we also, we're talking about the village of Hamel. I mean, the whole thing's country. It's not like you left it in downtown St. Louis with keys in it. I mean, that's country. That's what we do out here. You leave your keys in there so you can find it. I don't think that means anything one way or the other. We're certainly not arguing that the owner deserved to have his truck stolen because he left the keys in it. So it doesn't make any sense to attribute to the defendant the responsibility to someone else if they come along because he left the keys in it. He did the best he could. The point is some of these things cut both ways, don't they? They do, but none of them go to show that he intended to take it and deprive the man of the truck permanently. It would have been a lot easier. He probably would have been in a lot better shape because who would have known he was there? He wasn't in his natural area. He didn't live there. He could have done anything with that truck. He could have asked the clerk, say, hey, call the sheriff and tell him that there's a truck here. Here's the license plates. And what do you think would have happened? He would have been arrested and charged with stealing the truck. Well, he would have had a lot better position in front of the jury to argue that he didn't want to permanently deprive the owner of the property. Well, that's possibly true, too. And if you look at the video and the discussion about the fact that he was a little altered, that would certainly explain why he wasn't in the best thinking mode, which also goes to the idea that perhaps he couldn't have enough sense to know whether he was, to form an intent to permanently deprive. But he didn't raise that defense, I don't guess. It certainly was not a high point of the trial at all. And there was certainly no medical evidence that said he was beyond capable of doing anything. But you watch that video, he's not right. When the police show up, who are called, not because of a stolen truck by any means. They show up because there's a weirdo wandering around. He's standing on the toilet looking out the little tiny window in the bedroom. Now, where's he going to go? I mean, he's obviously not quite right. So that certainly is. Oh, my goodness. You all right? You and that. You should go. Reverses conviction. Thank you. Thanks. Your Honors, may it please the Court, my name is Timothy James Sting and I represent the people of the State of Illinois. Your Honors, I want to first address the questions that you had asked Ms. Strawn during her argument. Justice Stewart, you had stated, isn't it the intent at the time? And we have specific indications from the record that show the defendant's intent at the time he took the car. On pages 314 and 315 of the record, he called Amy Hickman Willis and said, hey, I stole a truck. Surely the defendant's words speak for themselves. That was his intent. He knew what he had done, stolen a truck. Moreover, Justice Stewart, you had said, don't the facts of this case cut both ways? Your Honors, I would concede that there are arguing points for both the defendant and the prosecution. However, what the defendant has failed to acknowledge is that the standard of review on the case at bar is in the light most favorable to the prosecution. It is the trier of fact who asserts the credibility of witnesses and resolves any conflicts or inconsistencies in the record. As the truth, as the Illinois Supreme Court stated, and I quote, true intention can be arrived at as nearly as possible by an examination of facts and circumstances and from them draw a parallel measure by the standards of reasonable men. Moreover, as the Henry Court stated, while an inference of an intent to permanently deprive may be rebutted by proof of an incompatible state of mind, the finder of fact is not required in light of the totality of the circumstances shown by the evidence to accept the defendant's version of the facts. So while the defendant may have their own versions of the facts as far as what the defendant was doing, that does not necessarily mean that the jury had to believe it. And this court is not in a position to retry the defendant but to look at the evidence from the record in the light most favorable to the prosecution. Moreover, Justice Goldenberg, she had stated that he didn't – is there any indication that he contacted the owner about, hey, I left your truck? No, he didn't. But what we do know is that he left the truck in the employee's parking lot of C.C. Food Mart. The defendant would have this court believe that he left it in a clearly lit area where anyone would get it. But no, he left it in an area where it was for employees only. This, again, shows his intent that he wasn't necessarily saying here's the truck out in the upwind for the owner. He did not contact the owner. And furthermore, to answer your question, Justice Goldenberg, the defendant fabricated his story to Officer Deeds when he arrived at the convenience store. When Officer Deeds arrived at the convenience store, he went up to the defendant and asked him, why are you here? And the defendant stated that he was dropped off by Amy Hickman Willis. Well, on pages 300 and 301 of the – yes, 300 and 301 of the record. I want to make sure I'm right. Ms. Willis stated that she had multiple sclerosis and was unable to drive a motor vehicle for five years. So clearly, for the defendant to say that he was dropped off by Ms. Hickman Willis was a knowing lie. It was a fabrication in front of the officer as to how he arrived there. Surely, that is yet another example of the defendant's intent to permanently deprive. He could have changed his mind and stated, yes, I don't want to steal this truck anymore. But that's not the case as far as we're looking at the intent at the time he did it. Moreover, the fact that he still willfully did not disclose what he had done with the truck and never mentioned the truck to Officer Deeds upon encountering them shows further examples of his intent. Finally, Justice Fulmer, you stated that he could have changed his mind. Well, the record kind of shows that he did to an extent. On pages 339 – I'm sorry, 350 of the record, it shows that he was pacing back and forth, as the clerk's testimony said, and he was, quote-unquote, nervous. As the defendant has admitted, he was in some type of an incapacitated state of mind. He certainly appeared that way, which is why she called the police on him on page 339. Therefore, the defendant was nervous. What was he nervous about? What was he going to do as far as with this truck? Was he going to return it? Was he going to confiscate it? We don't know. And no one knew. The jury didn't know. That's not the issue before us, though. The issue is from the totality of those facts in the light most favorable to the prosecution, where does the jury stand? Is it rational? Could a reasonable trier of fact make this conclusion, or is it arbitrary and unreasonable? Surely, given the lies of the facts, we have a defendant who exhibited nervous behavior on 350 of the record, a defendant who admitted to stealing the truck after he did so on 314 and 315 of the record, and a defendant who knowingly lied to the officer of deeds as far as he had – he arrived at the convenience stores on page 358. Surely, the jury could have found that the defendant did not intend to leave the truck at C.C. Food Mart for the owner. Moreover, the defendant in her reply brief states that this court should take judicial notice of the fact that the people who picked him up, his mother and sister, were in Jacksonville, which is 96 miles away, so it would be approximately an hour and a half. And she states this to – states that it shows that even though on page 360 it shows the officer said, where are you, what are you going to do, and the defendant called his mother and sister afterwards on 360 of the record, she states that it's not clear that he didn't call before because the defendant's sister, Melissa Edwards, testified that she got the call at 9 o'clock and that they arrived 20 to 25 minutes after Officer Deeds arrived. They arrived at 10 to 1030. Therefore, that's only 25-some-odd minutes between the time that Officer Deeds arrived and the defendant's mother and sister came, therefore showing that there was an intent to leave it there. But we don't know if the defendant was planning on doing it. We don't know if he was, again, looking for the – his mother and sister to take him away so he could get it later on or whether he was going to ask them whether or not they were going to confiscate the truck. We simply do not know. True intention is impossible to truly get the person's mind and thoughts. What we do to get to true intentions is circumstantial evidence. It is what we see and what the defendant does that shows his intention. As it is, the age-old action states, actions speak louder than words. The defendant here stole the truck and admitted it, was nervous about what he was going to do with the truck, and lied to the officer when confronted. All of those circumstances show, again, the defendant more likely than not had that intent. And here we go with beyond reasonable doubt because this has already been adjudicated. So now all we're looking at is whether it was in the light most favorable to the prosecution. And lastly, this strongly, correctly states there is an okay-sum point here. We don't have these particular facts in any case in Illinois. Rule 23 states that an opinion should be published when they either create, modify, or further explain a rule of law. Here, this is an ideal example of something that has potential to be published because it would clarify this particular instance of law as far as what intent to permanently deprive truly means. And by stating that it is at the time when the defendant takes it and the circumstances outside of that that the defendant may argue go to the credibility of witnesses and the credibility of testimony. That would, again, help clarify future cases for both defendants and prosecutors alike as to the level of law. But as the law we have it now, while there is no case on point, we have cases such as Henry and Paulsdorf which state that defendants were stopped by police on the roadway and the intent to permanently deprive was that the police intervene. We could very well say the police intervened here because they came to the gas station. Again, what the defendant was planning on doing we do not know. But while there are arguing points for the defense, it is emphatically stressed that it is in the light most favorable to the prosecution. And we have facts, evidence, and testimony that the jury considered and believed show the defendant's intent beyond a reasonable doubt. Do any of you justice have any questions for me? Thank you, counsel. Thank you, Your Honor. I just want to make a few points. We need to talk about how we know what his intent was at the time of the taking. At the time someone gets in a car and drives away, how do you know if he's taking it because he's stealing it or if he's taking it because he's going for a drive? How do you know the minute he drives off? Did he call his friend and say, I stole the truck? I believe he said, I took a truck. I don't believe he said, I don't believe, I would bet my life he does not say stole. Okay. I don't actually have the records on me, so I'm just confident it says took, not stole. Even if he did say stole, what does he know? Just because he didn't. Well, he didn't say I borrowed. Well, there's that. But he doesn't decide what the law is. Don't believe me. He doesn't. Well, he doesn't. Save me from myself. He doesn't know the intricacies of the intent statutes in which. I would think he would know the difference between stealing and borrowing. But taking the truck, there's a middle ground between borrowing and stealing. There's not just borrowing or stealing. I mean, to me, borrowing means I called up my neighbor and said, I need to borrow your car. I got something's wrong with mine. I need your car. That's borrowing. What he did is in between those two. And because we can't tell the minute he gets in the car, which he intends to do. Does he intend to permanently deprive or does he intend to bring it back or lose it or who knows what he intends. We can't know until we look at the full gambit. He drove around for a week and left it off there. That's totally different. Why would that be different? Because after so much time has gone by, he's used the truck, he had used the truck the entire week. I think that shows more commitment to that action. More, it would just give you a better idea that he intended to take it away from someone as opposed to taking it for an hour. But we're talking about time. I think it could matter. I don't think it's the major factor in this situation. But I did want to clarify that I'm pretty sure he didn't say I stole the truck and said I took it. And he doesn't know the differences between. I mean, he didn't call up and say, I committed an aggravated criminal sexual assault. No, pardon me. It's not aggravated. He doesn't know the difference. So I don't think that is a significant thing. Then he lied to the police officer. I don't think it makes a big difference either. He knew he pulled a stud. I mean, I'd be nervous if I had done a little something wrong versus a big something wrong. How do we know that he's pacing and anxious and lying to the cops because he knows he's committed a theft? He might have committed a joyride. It's still a crime. That would make you nervous anyway. It's just not the crime you're charging with. I think it's also important to talk about how there's not a single case in this state that says this conduct is theft. There's not an allegation. In effect, it assists the council for not offering lesser-included offense of criminal trespassing. I don't think I could have made that because it's a strategy decision. Pardon me? I don't think I could have argued that because it's a strategy decision. And how do I know he didn't think about that really hard and decide, you know what, let's go for broke here. I don't know. I don't know what he did. So I don't think I could argue it at this stage. Believe me, I'd like an argument. I would. All of these discussions, the questions we've asked, that was argued on both sides of the jury, wasn't it? About what, you know, appeared to show what his intent was. Yes, it was. But what was never argued to the jury is, because it's not the sort of thing that they understand, is that there's no such case that says this is theft. And that's what I want you to understand is that never in this state have we had a published case that says what he did was theft. In all the cases that are very, very similar, there was a much greater, the problem is that he was interrupted by police or he wrecked the car, something that was different from putting the truck where it could be found. Even in Henry, there's a comment about putting the truck where the owner could find it, putting the item where the owner could find it, is an indication that he did not intend to permanently deprive. And that's exactly what we have here. So that part, that theory should be applied in this case. Do you think it makes a difference whether he parked it at, you know, a couple of houses down from where the owner lived versus, you know, a gas station somewhere? It certainly could in a lot of cases. I think in this situation it's a little different because he's not, he's in a rural area that's not his own. You know, he's probably driven around and done God knows what, but he's not near that. I think if you, this would be great evidence that he intended more to permanently deprive it. What if he parked it down the street from the C.C. Food Mart and hooked it down there to call his mom? Now, there he's hiding the truck. He's certainly not putting it out in front of everybody. There's this talk about the employee parking area not a relevant area. Talk about a convenient mark in the country. This is the employee parking area, this is the shopping area. I mean, I haven't been to this particular one. We all know what country convenience marks are like. I don't think that shows an intent to hide the thing. It would have been a lot easier to do that. He didn't do that. I think when you look at all of the factors here, that there just is not enough to get you to prove the intent to permanently deprive it. It's simply not there in this case. So he would ask that you reverse his conviction. Thank you. Thank you very much for your briefs and argument. We'll take the matter under advisement. We recess for lunch.